IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH C. SEMENTILLI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-340 Erie |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

     Plaintiff, Joseph C. Sementilli, (hereinafter "Plaintiff"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.* Plaintiff filed applications for DIB and SSI on December 22, 2004, alleging that he was disabled since August 24, 2004 due to numbness in his legs, feet and hands; depression; anxiety; and failing vision (Administrative Record, hereinafter "AR", 74-77; 103; 363-364). His applications were denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 55-59; 365-370). Following a hearing held September 12, 2007, the ALJ found that the Plaintiff was not entitled to a period of disability or disability insurance, and was not eligible for SSI benefits (AR 16-25; 390-408). Plaintiff's request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons that follow, I will deny both motions and the matter will be remanded to the Commissioner for further proceedings.

### I. BACKGROUND

     Plaintiff was 46 years old on the alleged disability onset date and 49 years old on the date of the ALJ's decision (AR 24). He is a high school graduate with past work experience as a bulk

material and labor handler for International Paper from 1980 to 2002, as a laborer for his brother's company for four months in 2005 and as a cart pusher at Wal-Mart for approximately five weeks in 2007 (AR 87; 395).

Plaintiff's medical records reflect that he was hospitalized from August 25, 2004 until September 3, 2004 following isopropyl alcohol intoxication (AR 111-210). A left lung abscess was discovered and treated during the course of his hospitalization (AR 112). He was clinically stable upon discharge and prescribed Flagyl, Rocephin and Ativan (AR 113).

Following his discharge, the Plaintiff followed up with Zengling Peng, M.D. at the McClelland Family Practice on September 14, 2004 (AR 242-245). Plaintiff relayed the circumstances surrounding his hospitalization, noting a long history of alcohol abuse (AR 242). He reported that he was unemployed and unable to find work (AR 242). His physical examination was unremarkable and he was directed to follow up in one month (AR 244).

Plaintiff returned to Dr. Peng on October 4, 2004 and complained of leg pain and depression, reporting that he had "good days and bad days" (AR 240). He stated that he had stopped drinking following 20 years of alcohol abuse and that Ativan kept him "out of the bars" (AR 240). He reported that he was unemployed and unable to pay his bills (AR 240). Dr. Peng found he was oriented in all spheres, his affect and mood were appropriate, his interaction was normal and he maintained good eye contact (AR 240). He also complained of severe leg pain, but his physical examination was again unremarkable (AR 240). Dr. Peng prescribed Lorzepam and Zoloft (AR 240-241).

On October 14, 2004, Plaintiff complained of bilateral numbness on the bottom of his feet, a burning sensation on the top of his feet and left shoulder pain (AR 234-235). On physical examination, Dr. Peng found the Plaintiff's neck was supple and he had a full range of motion in his extremities with no deformities (AR 235). He had normal mobility and a normal gait and his sensation was intact (AR 235). He was assessed with bilateral leg numbness and left neck and shoulder pain (AR 235). Naprosyn was added to his medication regimen for his shoulder pain (AR 235).

Cervical spine x-rays taken November 4, 2004 showed mild to moderate degenerative cervical spondylosis (AR 220). X-rays of the Plaintiff's left shoulder were unremarkable (AR

221). A December 2, 2004, a nerve conduction study showed minor sensorimotor peripheral neuropathy of the Plaintiff's legs (AR 226-227). Jeffrey Esper, D.O., opined that the Plaintiff's history of alcohol abuse and nutritional issues were the most likely causes of his neuropathy (AR 227).

On January 12, 2005, Plaintiff again complained of bilateral numbness in his feet and reported that he was scheduled to see a neurologist (AR 230). Physical examination showed that his deep tendon reflexes were normal, his sensation was intact, his station and gait were normal, and he was psychologically oriented in all spheres (AR 231). He was prescribed Neurontin for his alcoholic neuropathy (AR 231).

Plaintiff was evaluated by Donald L. Rezek, M.D., a neurologist, on January 27, 2005 for his complaints of neuropathy (AR 251-253). He complained of numbness in his feet as well as a burning sensation, but stated that Neurontin had helped significantly with the paresthesias (AR 252). He relayed a "very heavy drinking history" and admitted to drinking up to a six-pack a day at the time of the evaluation (AR 252). He reported that Zoloft helped with his depressed mood (AR 252). On mental status examination, Dr. Rezek noted that his attention span, concentration and judgment were normal and there was no obvious problem with his affect or thought process (AR 253). On physical examination, he exhibited good strength and tone throughout (AR 253). His sensory examination demonstrated decreased sensation upon pinprick to the instep and vibratory sensation was mildly diminished in the Plaintiff's toes (AR 253). Coordination testing demonstrated mild tremor on finger to nose testing (AR 253). He exhibited normal grip and strength in his hands, his gait was intact to heel, toe and tandem walking and there was fair range of motion of his neck (AR 253). Dr. Rezek assessed him with neuropathy most likely alcohol related, related tremor and possible "early DT's" (AR 253). He recommended that the Plaintiff participate in an alcohol rehabilitation program in order to improve his neuropathy (AR 253).

On February 16, 2005, Larry Smith, Ph.D., a state agency reviewing psychologist, completed a Psychiatric Review Technique Form ("PRTF") (AR 254-266). Dr. Smith found that the Plaintiff was only mildly limited in his activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace (AR 264). He further found there was insufficient evidence relative to repeated episodes of decompensation of extended

duration (AR 264). Dr. Smith found that the Plaintiff's mental impairments were non-severe (AR 266).

On February 18, 2005, Johnston Wayne, a state agency adjudicator, reviewed the medical evidence of record and completed a Physical Residual Functional Capacity Assessment form (AR 267-272). Mr. Wayne opined that the Plaintiff had no limitations physically (AR 267-262).

On April 29, 2005, Dr. Peng declined to complete a form for the Plaintiff's continued disability; he referred him to an occupational physician for a functional capacity evaluation in order to determine his continued disability (AR 292; 294).

Plaintiff returned to Dr. Peng on November 8, 2005 to "discuss disability" (AR 285). He complained of numbness in his hands and feet but admitted that he was still drinking two beers a day (AR 285). He reported suffering from vision problems, stating that his eye doctor told him he was in the beginning stages of glaucoma and had a degenerative cataract (AR 285). He indicated he was depressed from not being able to work, was anxious due to his bills piling up and suffered from sleep difficulties (AR 285). Dr. Peng reported that his neurological examination revealed only slightly diminished sensation and his deep tendon reflexes were normal (AR 287). Dr. Peng completed a form indicating that the Plaintiff was "temporarily disabled" for three months, but indicated that his future forms should be completed by a neurologist (AR 287). When requested by the Plaintiff to complete another form for disability on December 2, 2005, Dr. Peng refused, stating that such form would have to be completed by a neurologist (AR 280).

Plaintiff completed an alcohol withdrawal program at Glenbeigh Hospital from June 7, 2005 through August 4, 2005 (AR 295-297). It was noted that he coped with his peripheral neuropathy without using medication (AR 295). Upon discharge from the program, he displayed no withdrawal symptoms and was medically and emotionally stable (AR 295).

Plaintiff began treatment at Community Health Net beginning in January 2006 (AR 357). He complained of peripheral neuropathy and numbness in both hands (AR 357). Plaintiff also reported suffering from depression and anxiety (AR 357). His neurological examination was within normal limits and he exhibited good strength (AR 357). In February 2006, he continued to complain of numbness and problems with his balance (AR 356). The physician ordered an

EMG and lab tests (AR 356).

When seen on March 20, 2006, Plaintiff was started on Elavil (AR 353). A repeat nerve conduction study on March 30, 2006 showed evidence of bilateral peripheral polyneuropathy of the Plaintiff's arms and legs (AR 352). On April 21, 2006, the Plaintiff complained of foot pain and numbness in parts of his hands (AR 353).

A cervical MRI dated May 15, 2006 showed degenerative disc disease with spondylosis and stenosis (AR 350). On May 22, 2006, Plaintiff returned to Community Health Net and was assessed with cervical spondylosis and neuropathy (AR 349). On June 21, 2006 he reported no change in his neck pain (AR 324).

On July 3, 2006, Plaintiff was evaluated by Daniel Muccio, M.D., for his cervical spondylosis (AR 346-348). He complained of numbness in his fingers and numbness and pain in his feet, but denied any neck or back pain (AR 346). On physical examination, he exhibited a full cervical range of motion, his low back was non tender, he had full motor strength in his upper and lower extremities except for 4/5 strength in his interossei muscles, his gait and stance were normal and he had diminished sensation to light touch in his fourth and fifth fingers bilaterally (AR 346). Dr. Muccio indicated that the Plaintiff's upper extremity numbness was consistent with the ulnar neuropathy found on the NCV study (AR 347). He further indicated that the nerve study suggested either S1 radiculopathies or peripheral neuropathy with respect to his symptoms of foot pain and numbness, but that his symptoms were more consistent with neuropathy (AR 347). He suggested the Plaintiff undergo an MRI of his lumbar spine in order to rule out the possibility of nerve root compression of his spine (AR 347).

Plaintiff returned to Dr. Muccio on August 18, 2006 for follow-up (AR 345). His neurological examination was normal (AR 345). Dr. Muccio observed that an MRI performed on July 13, 2006 revealed the presence of disc degeneration and a small disc bulge at L4-5, but there was no evidence of significant nerve root compression (AR 345). He believed the Plaintiff's leg symptoms were likely due to neuropathy and that his upper extremity symptoms were due to a compressive ulnar neuropathy or peripheral polyneuropathy affecting his ulnar nerve (AR 345). He recommended the Plaintiff undergo evaluation by a neurologist for his peripheral polyneuropathy (AR 345).

5

Plaintiff was seen by Barry Kissoondial, M.D., at Community Health Net on August 21, 2006 and complained of numbness in both feet (AR 343). On physical examination, straight leg raise testing was normal and he exhibited only slightly diminished motor strength (AR 343). He was prescribed Naprosyn for his pain (AR 343).

On September 18, 2006, the Plaintiff was seen by Rande Short, M.D., at Community Health Net and reported mild weakness in his hands and feet (AR 339). He reported that he had "helped remove lead from people's houses most of last summer" (AR 339). Plaintiff's neurological examination was grossly intact, his gait was appropriate and his motor strength was 5/5 (AR 339). Dr. Short assessed him with "polyneuropathy, etiology unclear" and referred him back to Dr. Esper for evaluation (AR 339).

On December 12, 2006, Dr. Short reported that the Plaintiff's neurological examination was grossly intact with no new findings (AR 335). He was assessed with peripheral neuropathy, etiology unclear (AR 335).

Plaintiff returned to Community Health Net on March 22, 2007 and was seen by Zahida Bhatti, M.D. (AR 333). Plaintiff reported that he was working part-time and would try to return to work full-time (AR 333). He reported an overall improvement in his symptoms (AR 333). On physical examination, Plaintiff demonstrated full strength in his arms and legs (AR 333). She completed the Plaintiff's medical assistance forms for disability until June 2007, at which time they would "discuss his disability" (AR 333).

On June 6, 2007, the Plaintiff was seen by Dr. Bhatti for a probable wrist fracture after falling at home and he was referred for x-rays (AR 327). Dr. Bhatti also refilled the Plaintiff's Elavil which he reported helped alleviate his symptoms of depression (AR 327).

On June 18, 2007, the Plaintiff began treatment at Stairways Behavioral Health for complaints of depression and anxiety (AR 304). The only medical problems noted were peripheral neuropathy (AR 307). He stated that he had previously worked at International Paper for 22 years until it closed and claimed that at the time of the intake interview he was unable to work due to peripheral neuropathy (AR 314). Despite his history of alcoholism, he denied any substance abuse history or treatment, but did report his arrest for public intoxication in June 2006 (AR 312; 314). The intake counselor noted that the Plaintiff had stable housing, was able to

meet his daily living needs and was intelligent with "good family support" (AR 315-316). His stated goals were to obtain a job "his body would tolerate" and stabilize his mental health (AR 315). In the summary portion of the intake form, the counselor stated that the Plaintiff had trouble finding work, was struggling with anxiety and depression and had recently broken his arm (AR 316). Based on the Plaintiff's recitation of his history, the counselor noted that the Plaintiff had no significant issues with drugs or alcohol and was currently taking Elavil (AR 316). It was recommended that he undergo individual counseling (AR 316).

Plaintiff testified at the administrative hearing on September 12, 2007 that he was a divorced, high school graduate who owned his own home (AR 394-395). He stated that he worked for International Paper as a bulk material handler until the plant closed (AR 396). He worked for his brother for approximately four months in 2005 performing construction labor and worked for Wal-Mart as a cart-pusher/greeter for approximately five weeks in 2007 (AR 395; 403). Plaintiff testified that numbness in his hands and feet prevented him from working (AR 397-398). He experienced pain in his feet, legs and hips for which he took Neurontin and Naproxen (AR 401). He further testified that he had was undergoing mental health counseling through Stairways Behavioral Health and had been on medication prescribed by Dr. Bhatti since 2006 for his depression (AR 398-399).

The ALJ asked Fred Monaco, the vocational expert, to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform light work in a low stress environment, meaning, simple, routine, repetitive tasks involving no more than minimal contact with the public (AR 404). The vocational expert testified that such an individual could perform the light jobs of a bench assembler, abrasive machine operator, and machine feeder and offbearer (AR 405).

Following the hearing, the ALJ issued a written decision finding the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 16-25). His request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 5-8). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported

by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through September 30, 2008 (AR 16). SSI does not have an insured status requirement.

To be eligible for DIB or SSI, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or a combination of such impairments) which is so severe that he is unable to pursue substantial gainful employment currently existing in the national economy. 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The process proceeds as follows:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,*

> 482 U.S. at 141. If it is not, the claimant bears the burden of
> showing (4) that the impairment prevents him from performing the
> work that he has performed in the past. *Id.* If the claimant satisfies
> this burden, the [Commissioner] must grant the claimant benefits
> unless the [Commissioner] can demonstrate (5) that there are jobs
> in the national economy that the claimant can perform. *Ferguson
> v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Plaintiff's case at the fifth step. At the first step, the ALJ observed that although it appeared that the Plaintiff may have engaged in substantial gainful activity since his alleged disability onset date, given his remaining findings, he found it unnecessary to decide this issue (AR 19). At step two, the ALJ found that the Plaintiff had the following severe impairments: bilateral, peripheral polyneuropathy of the upper and lower extremities; degenerative disc disease and spondylosis with stenosis of the cervical spine; alcohol abuse; and depression, but determined at step three that he did not meet a listing (AR 19-20). At step four, the ALJ concluded that he retained the residual functional capacity to perform light work limited to a low stress environment involving simple, routine, repetitive tasks with minimal contact with the public (AR 20). At the final step, the ALJ found that the Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 24-25). The ALJ additionally determined that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible (AR 22). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Plaintiff advances several arguments in support of his claim that the ALJ's decision is not supported by substantial evidence, however, I shall focus my discussion on the ALJ's credibility determination since it is dispositive in this case.

   An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). Subjective complaints must be seriously considered, whether or not they are fully confirmed by the objective medical evidence. *See Smith v. Califano*, 637 F.2d 968 (3rd Cir. 1981). The ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *Baerga v. Richardson,* 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van*

*Horn v. Schweiker*, 717 F2d 871, 873 (3rd Cir. 1983).

Plaintiff argues that the ALJ ignored his long work history and his subsequent attempts to return to work in evaluating his credibility, citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3rd Cir. 1981) (noting that, when a claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility) and *Reider v. Apfel*, 115 F. Supp. 2d 496, 507 (M.D.Pa. 2000) (finding that the ALJ failed to properly address the claimant's work history and post-accident unsuccessful work attempts). *See* Plaintiff's Brief p. 11. The Commissioner does not specifically counter the Plaintiff's argument in this regard; rather, the Commissioner argues that because the Plaintiff's doctors never reported that pain prevented him from standing and/or walking on and off for approximately six hours in an eight hour work day and pain does not necessarily establish disability, the ALJ's credibility determination is supported by substantial evidence.

In *Gates v. Astrue*, 2008 U.S. Dist. LEXIS 64139 (W.D.Pa. 2008), this Court remanded the claimant's case to the ALJ for reconsideration of the claimant's credibility due to the ALJ's failure to have considered the claimant's long and productive work history as a licensed practical nurse for 17 years and his attempts to work part-time after his injury, stating:

> Gates previously worked for approximately 17 years as a licensed practical nurse, from 1985 until February 2002, when he ceased work due to his alleged impairments (AR 65-66; 96; 379; 429; 441). The Commissioner contends that the ALJ "clearly considered" this history because he "recognized" Gates' previous job as a licensed practical nurse and that he continued to work part-time during the period at issue. *Defendant's Brief* p. 14. The ALJ's decision however, contains only a statement that Gates previously worked as a licensed practical nurse, and this observation was made in connection with his vocational analysis and not his credibility assessment (AR 24). *See e.g., Reider v. Apfel*, 115 F. Supp. 2d 496, 507 (M.D.Pa. 2000) (finding that ALJ failed to properly address claimant's work history and post-accident unsuccessful work attempts); *Sidberry v. Bowen*, 662 F. Supp. 2d 1037, 1039-40 (E.D.Pa. 1986) (ALJ erred in ignoring claimant's work history and efforts to hold down a job).

*Gates*, 2008 U.S. Dist. LEXIS 64139 at *19-20.

In *Corley v. Barnhart*, 102 Fed. Appx. 752 (3rd Cir. 2004), in refusing to remand a case based upon an ALJ's failure to have commented on the claimant's long and productive work history, the court observed:

10

> Corley's second argument is that the ALJ erred by failing to factor into the assessment of his credibility the fact that he had a long and productive work history. In support of this argument, Corley relies on cases in which courts have viewed the testimony of claimants with long and productive work histories as highly credible. However, in each of these cases, *the claimant not only had a long and productive work history, but also showed evidence of severe impairments or attempted to return to work*, and neither of these circumstances exist here. *See, e.g., Debrowolsky v. Califano*, 606 F.2d 403 (3rd Cir. 1979). Therefore, the ALJ did not err by failing to afford Corley heightened credibility based solely on his work history.

*Corley*, 102 Fed. Appx. at 755 (emphasis added).

Here, the ALJ did not discuss the Plaintiff's long work history in the context of his overall credibility determination and only mentioned his unsuccessful attempts to return to work as circumstantial evidence of an ability to perform work of a less demanding nature. In light of the above case law, I find that the ALJ was obligated to consider the Plaintiff's long work history and attempts to return to work in his overall credibility analysis. This matter shall therefore be remanded to the Commissioner for further consideration consistent with this Memorandum Opinion. Given the Court's remand, it is unnecessary to reach the remaining challenges to the ALJ's residual functional capacity determination, since the ALJ will re-evaluate the Plaintiff's functional limitations in the course of reconsidering his credibility.

## IV. Conclusion

Based upon the foregoing reasons, the Plaintiff's motion for summary judgment shall be denied and the Commissioner's motion for summary judgment shall be denied. The matter shall be remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH C. SEMENTILLI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-340 Erie |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

AND NOW, this 8th day of February, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 9] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 11] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is hereby directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ____